**ORDER OF RAILWAY CONDUCTORS AND BRAKEMEN, C. P. Dorn, W. G. Stanley et al., Appellants,**

v.

**LOUISVILLE & NASHVILLE RAILROAD COMPANY et al., Appellees.**

**No. 20714.**

United States Court of Appeals
Fifth Circuit.

April 20, 1964.

Cubbedge Snow, Macon, Ga., V. C. Shuttleworth, H. E. Wilmarth, Cedar Rapids, Iowa, Martin, Snow, Grant & Napier, Macon, Ga., Shuttleworth & Ingersoll, Cedar Rapids, Iowa, for appellants.

Herman Heyman, Atlanta, Ga., Gould B. Hagler, Augusta, Ga., Edenfield, Heyman & Sizemore, Atlanta, Ga., Fulcher, Fulcher, Hagler & Harper, Augusta, Ga., for appellees.

Before TUTTLE, Chief Judge, WISDOM, Circuit Judge, and CARSWELL, District Judge.

TUTTLE, Chief Judge.

This appeal challenges the power of the district court to enjoin a threatened strike by appellants to enforce their demands in a labor dispute, notwithstanding the general prohibition of the Norris-LaGuardia Act, 29 U.S.C.A. § 101 et seq.

While the Norris-LaGuardia Act prohibits a district court from issuing "temporary or permanent injunction in a case involving or growing out of a labor dispute" in most cases, an exception has been carved out in certain cases where it is apparent that a threatened strike by a labor organization, or a threatened unilateral change in existing agreements touching on wages and hours and conditions of employment by the employer would be in violation of the Railway Labor Act. The most recent case of such a nature is Brotherhood of Locomotive Engineers, et al. v. Louisville & Nashville R. Co., 373 U.S. 33, 83 S.Ct. 1059, 10 L.Ed.2d 172. There are also other exceptions, none of which, however, are here applicable. The trial court granted the injunction that is here appealed from on the theory that the threatened strike by the appellant would have been a violation of the Railway Labor Act.

The dispute which ultimately threatened to end in the strike enjoined by the trial court commenced when the appellants, pursuant to Section 6 of the Railway Labor Act (45 U.S.C.A. § 156) served notice for a change in the existing collective bargaining agreement on March 21, 1961. This notice was followed by conferences between the Railroad and the Brotherhood, as required by the Act. Such conferences proving fruitless, the services of the National Mediation Board were requested and utilized by the parties. No settlement was reached by the National Mediation Board and, on December 21, 1962, the Board notified the parties that their mediatory efforts had failed and, pursuant to Section 5 of the Act, it urged the parties to arbitrate the dispute. This proffer of arbitration was rejected by the Brotherhood on January 29, 1963, the parties were notified that the National Mediation Board was closing its files and, except as provided by Section 10 of the Railway Labor Act (45 U.S.C.A. § 160),[1] that the parties would be free to exercise self help at the end of the thirty day cooling-off period, as set forth in Section 5.

The Brotherhood thereupon notified the carrier that strike authority had been issued, to become effective after the time limit had expired. The President did not deem it appropriate to appoint a presidential emergency board. Accordingly, the thirty day cooling off period, following the Board's termination of mediatory efforts, expired on February 28, 1963. To forestall the strike, the carrier filed its complaint on February 27th, asking for the injunction. A temporary restraining order was issued, and on April 2, 1963, after hearing, a permanent injunction was granted to the appellee "as prayed in the complaint."

The theory on which the appellee sought, and the basis on which the court granted, the injunction was that long prior to the giving of the Section 6 notice on March 21, 1961, by the appellant, all of the important carriers in the country had simultaneously, on November 2, 1959, given a Section 6 notice to all of the Brotherhoods, including appellant, of proposed changes in the existing agreements and that the Brotherhoods had, in September 1960, also given notices to the carriers proposing changes, which proposal and counter-proposal, combined into what we may call the "national case" was being processed through the procedures provided for in the Railway Labor Act.

Appellee contends that the processing of appellant's Section 6 notice of March 21, 1961, was improper and amounted to nought because of the prior filing of the Section 6 notices that comprised the national case. In any event, the national case went through the Mediation Board and thereafter was considered by a presidential emergency board, whose recommendation was not binding on the parties, but which was, in fact, rejected by the Brotherhoods; whereupon the proposed changes of the carriers would have become effective were it not for a suit then filed by the Brotherhoods in a Unit-

1. This is the section that authorizes the President to appoint an emergency board.

ed States District Court in Illinois. This court dismissed the complaint, but entered a stay restraining the carriers pending appeal. This postponed the final determination of the national case until it was finally disposed of by the Supreme Court sub nom. Brotherhood of Locomotive Engineers v. B. & O. Railroad Company, 372 U.S. 284, 83 S.Ct. 691, 9 L.Ed. 2d 759. The mandate of the Supreme Court was entered on April 2, 1963, vacating the stay and any restraining order that would have affected the rights of the appellant here in connection with the national case. Thereafter, on August 28, 1963, the Congress completed legislation known as S.J.Res. 102, 77 Stat. 132, which further delayed self help by either the carrier or the Brotherhoods for an additional period of 180 days, which, of course, expired on February 28, 1964.

■ The trial court, without expressly delineating the issues in its order, nevertheless found that the notice of March 21, 1961, given by the appellant covered the same issues, or at least some issues, which were comprehended within the national case. That is to say, that a determination of the national case would at least have a substantial effect or influence on the solution of the local dispute. Assuming, for the purpose of this opinion, that such was the case, we are unable to determine any basis for the trial court's finding that when the national case had come to a conclusion with the issuance of the mandate of the Supreme Court in the B. & O. case, either party was not then entitled to act by self help as to all the matters included in the national case. It follows, of course, that the appellants would then have the authority to proceed by self help in their local case.

Moreover, we find no basis in the Railway Labor Act for the contention of the appellee that the earlier filing of a notice of changes by all of the carriers in 1959, or by the Brotherhoods in 1960, made nugatory or otherwise ineffectual the Section 6 notice filed by the appellant on March 21, 1961.

This precise point has been decided by the Court of Appeals for the Eighth Circuit in Missouri-Illinois R. Co. v. Order of Railway Conductors and Brakemen, et al., 8 Cir., 322 F.2d 793, where it is said:

"Finally, appellant's claim that appellees violated the terms of the Act by initiating a second dispute on the same subject matter while the national dispute was still in progress, is without merit. No section of the Railway Labor Act points to a prohibition such as appellant contends exists. Nor, do we feel, can any be implied. Before we should undertake to hold Norris-LaGuardia inapposite to the problem here presented, a much clearer showing of a statutory violation would be required. Chicago, Rock Island & Pacific R. Co. v. Switchmen's Union, 2 Cir., 1961, 292 F.2d 61, cert. den. 370 U.S. 936 [32 S.Ct. 1578, 8 L.Ed. 2d 806].

"As the mediatory processes of the Railway Labor Act have been completed here, and as no showing has been made that appellees have in any way violated the provisions of that Act, the District Court properly concluded that it was without jurisdiction to enjoin the threatened strike." 322 F.2d 793, 798.

It is apparent from the record before us that the day the trial court granted the permanent injunction, appellant was free to strike without in any way violating the provisions of the Railway Labor Act. To be sure, several months later Congress passed legislation that imposed a six months stay of any self help so far as related to the national case. Assuming, but not deciding, that this legislative stay would have affected the rights of the appellants if they had already called a strike, the stay itself has now expired and cannot be used to bolster the legality of the action of the trial court entered on April 2, 1963.

On the record before the trial court, the injunction sought was prohibited by the Norris-LaGuardia Act. The action

of the trial court in granting it, therefore, was error.

The judgment is reversed and the case is remanded for further proceedings not inconsistent with this opinion.